## 55686. GORDON v. THE STATE.

Deen, Presiding Judge.

David Eugene Gordon appeals from his conviction for rape, kidnapping, and armed robbery.

1. Appellant contends that the trial court erred in overruling his objection to the admission of a box containing playing cards and photographs of fingerprints on the surface of the cards. He argues that the deck of cards upon which his fingerprints were found is a fungible article which cannot be identified by the witnesses by mere observation and that there is no evidence that the deck of cards introduced into evidence is the same deck that belonged to the victim.

The victim testified that she owned a deck of playing cards similar to state's exhibit no. 3, that she purchased them around Christmas time, but had never removed them from their cellophane wrapper, and she stored them

in the letter holder in the hallway of her home. When she returned home with Detective Kinney after reporting the crime, she noticed that the cards were out of the box and in a stack on her dresser. After she showed them to the detective, he took them away with him. Detective Kinney testified that he removed the deck of cards that was found on the victim's dresser on March 12, 1977, and that he turned them over to Detective Wilson. Detective Wilson testified that he received a deck of cards from Detective Kinney during the evening of March 12, 1977, and that he processed them for fingerprints by spraying them with ninhydrin solution, developed some fingerprints on their surface, and he secured them into evidence. Detective Wilson also testified that he took ink impressions of appellant's fingerprints shortly after his arrest on April 15, 1977, and compared them with the prints on the cards. After determining that the two sets of prints were similar, he placed the cards in a Kodak film box, sealed it, and turned the box and the fingerprint card over to Detective Superintendent Barnett. Detective Barnett testified that he received the sealed film box and the fingerprint card from Detective Wilson and he took them to Larry Hankerson at the state crime lab in Atlanta. Hankerson testified receiving the sealed film box containing the deck of cards and the fingerprint card from Detective Barnett.

"When a test has been performed on an item of alleged evidence linking defendant to a crime, there are at least three considerations involved in the identification of the item: (1) is it properly identified as having actually come from the defendant? (2) is it properly identified as the item actually tested? (3) where the item is one of a class of fungible items, e.g. blood samples, is an adequate chain of custody presented to preserve its identity? . . . The refinement made upon this test in *Starks v. State,* 113 Ga. App. 780 (149 SE2d 841), had the effect of removing the chain of custody consideration from the identification of discrete and recognizable physical objects. . . " *Terry v. State,* 130 Ga. App. 655, 656 (204 SE2d 372) (1974).

Here, all of the above tests have been met. The victim testified that she did not remove the cellophane wrapper from the cards and that she found them outside their box on her dresser after she was attacked. This testimony

leads to the inference that her attacker amused himself playing cards while waiting for the victim to come home. Appellant testified that he had never been inside the victim's home until his arrest on April 15, 1977, one month after the victim was raped. The identification of his fingerprints on the cards satisfies the requirement that the item be sufficiently identified as having come from the defendant. The chain of custody established by the detectives' testimony and that of the state crime laboratory's fingerprint expert fulfills the second requirement of identification of the item actually tested. The third requirement of establishing a chain of custody for a fungible item has also been met. While a deck of playing cards can be considered to be a fungible item because it is mass produced and identical to thousands of other similar decks of cards, the required chain of custody as to this particular deck was clearly established by the testimony of the victim, Detective Kenney, and Detective Wilson. At the time Detective Wilson sprayed the cards with ninhydrin spray on March 12, 1976, and caused the fingerprints to be made visible, they ceased to become a fungible item and the *Starks v. State,* supra, exception becomes effective. However, even after this point, the evidence reveals that chain of custody was carefully preserved until the cards were examined by the state's expert witness. We find this enumeration of error to be without merit.

2. Appellant complains that the prosecution improperly placed his character into evidence by stating that the victim saw him in her home approximately one month after she was raped, and that she called a policeman. After hearing this testimony, the court held a lengthy hearing outside the presence of the jury in order to determine the exact scope of the testimony. The court then ruled that the only testimony it would admit was to go to the question of identification only and instructed the witness that she could not make any reference to the police being at her home, that appellant was arrested or handcuffed, or refer to any burglary charge against him. As to questions from defense counsel, the court ruled that she was to answer as best she could without going into matters of another crime.

As a general rule, evidence of other crimes is inadmissible. However, an exception is permitted where a separate crime ". . . may bear upon the question of the identity of the accused." *State v. Luke,* 232 Ga. 815, 816 (209 SE2d 165) (1974). "As *State v. Luke,* supra, points out, all the circumstances connected with the arrest are admissible in evidence to be weighed by the jury for what they are worth. The fact that these circumstances may be prejudicial in that they tend to establish an extraneous crime, does not necessarily, . . . make them inadmissible." *Deuser v. State,* 138 Ga. App. 211, 213 (225 SE2d 758) (1976).

Here, the court was extremely cautious about allowing into evidence any testimony that might be prejudicial to appellant. Although the victim's testimony that she discovered appellant in her home approximately one month after the rape and that she called a policeman might have been prejudicial to appellant, it was admissible to prove identity. We find no error in the court's denial of appellant's motion for a mistrial.

3. In his final enumeration of error, appellant asserts error in the trial court's failure to instruct the jury that they should not consider adversely to defendant the fact that police were called when he was in the victim's home on April 15, 1977, and that the court erred in failing to instruct the jury that this testimony was admitted only for purposes of identification and should not reflect adversely on appellant's character. Appellant's argument that the victim's testimony was illegal and therefore required correction by proper instruction to the jury is without merit. The testimony was not illegal and in the absence of a request for such a charge at trial, this enumeration is without merit. *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976).

*Judgment affirmed. Smith and Banke, JJ., concur.*

SUBMITTED APRIL 4, 1978 — DECIDED APRIL 28, 1978.

*Fuller & Schiller, William M. Schiller,* for appellant.
*F. Larry Salmon, District Attorney, Wallace W.*

*Rogers, Jr., Assistant District Attorney,* for appellee.